IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BRANDON GRANT,

                Plaintiff,                      Civil Action No.
     v.                                 9:17-CV-1224 (GLS/DEP)

KOPP, Correction Officer, Shawangunk
Correctional Facility,

                Defendant.

_____

APPEARANCES:

FOR PLAINTIFF:

BRANDON GRANT, *Pro se*
14-A-3700
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

FOR DEFENDANT:

BARBARA D. UNDERWOOD          HELENA O. PEDERSON, ESQ.
Acting New York State Attorney General   Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

This is a civil rights action brought by *pro se* plaintiff Brandon Grant, a New York State prison inmate, pursuant to 42 U.S.C. § 1983. Although his complaint asserted additional claims against other individuals, the only remaining cause of action is an Eighth Amendment excessive force claim asserted against D. Kopp, a corrections officer at the facility in which plaintiff was confined at the relevant times.

In response to plaintiff's complaint, defendant has moved for its dismissal, arguing that, on its face, the complaint demonstrates that Grant failed to fully exhaust available administrative remedies before commencing suit. For the reasons set forth below, I recommend that defendant's motion be denied.

I.   <u>BACKGROUND</u>[1]

Plaintiff is a prison inmate currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. While he is currently confined

---

[1]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964).

elsewhere, at the times relevant to the claims set forth in his complaint, plaintiff was designated to the Shawangunk Correctional Facility ("Shawangunk"), located in Wallkill, New York. *Id.*

The sequence of events giving rise to plaintiff's claim against defendant Kopp was set in motion on August 6, 2017, when plaintiff slipped and fell in a special housing unit shower. Dkt. No. 1 at 6-7. As a result of the fall plaintiff was knocked unconscious, and non-medical personnel at the facility "dragged" him out of the shower. *Id.* After being administered four shots of "Narcain" by medical personnel based upon their belief that plaintiff had overdosed on heroin, Grant was transferred to a local hospital via ambulance for x-rays and was returned later in the day to the prison. *Id.* at 6-8.

On August 7, 2017, while confined in the Shawangunk infirmary, plaintiff awoke and pressed a call button in an attempt to alert an officer. Dkt. No. 1 at 8. When defendant Kopp arrived shortly thereafter, the officer referred to plaintiff as a drug user, charged at him, and kicked his right foot, causing Grant's orthopedic boot, which had been secured to his right foot as treatment for a fracture, to fall off and slide across the room. *Id.* Defendant Kopp threatened plaintiff with additional violence if he again pressed the call button. *Id.*

3

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on November 8, 2017. Dkt. No. 1.

Plaintiff's complaint was accompanied by an application for leave to

proceed in the action *in forma pauperis* ("IFP"). *Id.* Dkt. No. 2.

On December 8, 2017, Senior District Judge Gary L. Sharpe

issued a decision in which he granted plaintiff's IFP application and,

following an initial review of plaintiff's complaint pursuant to 28 U.S.C. §§

1915(e), 1915A, dismissed all of plaintiff's causes of action, with the

exception of the excessive force claim asserted against defendant

Kopp.[2] Dkt. No. 8 at 12-13.

Defendant Kopp filed a motion to dismiss plaintiff's remaining claim

for failure to state a claim upon which relief may be granted on February

16, 2018. Dkt. No. 19. In his motion, defendant argues that plaintiff's

complaint makes it clear that plaintiff did not complete the applicable

grievance process and, therefore, failed to exhaust the available

administrative remedies. Dkt. No. 19-1 at 4-8. Plaintiff has since

responded in opposition to defendant's motion, Dkt. No. 21, which is now

fully briefed and ripe for determination and has been referred to me for

---

[2]    Plaintiff's motion for reconsideration of Judge Sharpe's order, Dkt. No. 16, was
denied on February 13, 2018. Dkt. No. 18.

the issuance of a report and recommendation pursuant to 28 U.S.C. §§

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See*

Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Standard of Review

    A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure, calls upon a court to gauge the

facial sufficiency of that pleading using a standard that, though

unexacting, "demands more than an unadorned, the-defendant-

unlawfully-harmed me accusation" in order to withstand scrutiny.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v.

Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal

Rules of Civil Procedure, "a pleading must contain a 'short and plain

statement of the claim showing that the pleader is entitled to relief.'"

*Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in

its requirements, that rule commands that a complaint contain more than

mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal

conclusions can provide the framework of a complaint, they must be

supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The tenet that a court must accept as true all of the allegations contained in a complaint does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant,

6

whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

### B.   Exhaustion of Remedies

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016).

Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[3]

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison

---

[3]    While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "'in a substantive sense,'" an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted)).

inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[4] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the

---

[4]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

9

grievant's appeal.[5]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2).

---

[5]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Because failure to exhaust is an affirmative defense to a prisoner's civil rights claim, an inmate plaintiff is under no obligation to plead facts demonstrating that he has complied with the PLRA's exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 211-17 (2007). If, however,

---

[6]     According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

such an inmate-plaintiff pleads sufficient facts revealing his failure to exhaust available administrative remedies, the complaint may be dismissed for failure to state a cognizable claim. *Jones*, 549 U.S. at 215-16; *see e.g.*, *Weidman v. Wilcox*, No. 12-CV-6524, 2014 WL 1056416, at *3 (W.D.N.Y. Mar. 17, 2014) (dismissing the plaintiff's complaint because it clearly alleged that the plaintiff failed to avail himself of the prison grievance procedure).[7]

In this case, defendant Kopp acknowledges that plaintiff alleges that he filed a grievance concerning defendant Kopp's actions. Dkt. No. 19-1 at 7. Citing page eight of plaintiff's complaint, defendant Kopp further argues that the grievance was "still pending at the time [plaintiff] brought suit[.]" *Id.* at 5. It is apparent from plaintiff's complaint, however, that his statement concerning a still-pending grievance was in reference to his grievance filed against the Shawangunk employees who allegedly dragged him out of the shower and failed to provide him with appropriate attention for his injuries. Dkt. No. 1 at 7-8. Plaintiff's complaint clearly makes a separate reference to a grievance filed by him against defendant Kopp. *See id.* at 9 ("[S]o I wrote [defendant Kopp] up myself

---

[7]    Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

and grieved it[.]"). *Id.* at 9. Plaintiff's complaint does not reveal the status of that grievance.

Plaintiff's opposition to defendant's motion is equivocal concerning the status of his grievance against defendant Kopp.[8] On the one hand, plaintiff claims that the sixty-day deadline for the CORC to respond to his grievance had expired by the time this lawsuit was filed, inferring that he had not yet received a response from the CORC. Dkt. No. 21 at 1. Further on in his response, plaintiff suggests that all of his papers concerning the grievance were confiscated or destroyed by corrections personnel, implying that the IGP may not have been available to plaintiff and triggering the PLRA's sole exception to the exhaustion requirement. *Id.*

These uncertainties illustrate the danger of deciding the issue of exhaustion on a motion to dismiss in all but the clearest of cases. *See, e.g., Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 546 (S.D.N.Y. 2015). Given the circumstances of this case, I conclude that the issue of exhaustion is better determined on a motion for summary

---

[8]     Plaintiff's opposition is properly considered in connection with defendant's motion to dismiss only to the extent that it is consistent with the allegations in his complaint. *See, e.g. Planck v. Schenectady County*, No. 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.) (citing cases). In this case, it is not at all clear that there is such consistency.

judgment, with the benefit of a fully developed record illuminating the circumstances surrounding plaintiff's efforts to grieve defendant Kopp's actions toward him. I therefore recommend that defendant's motion to dismiss be denied.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's complaint in this action alleges that he filed a grievance concerning defendant Kopp's actions forming the basis for the remaining excessive force claim in this action. It does not, however, disclose the status of that grievance, and specifically whether it was fully adjudicated through to the CORC prior to commencement of this action. Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint in this action (Dkt. No. 19) be DENIED, without prejudice to defendant's right to raise the issue of exhaustion at an appropriate later juncture.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[9] FAILURE TO SO OBJECT TO THIS REPORT WILL

---

[9]    If you are proceeding *pro se* and are served with this report and

PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of

this report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      May 17, 2018
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

---

recommendatoin by mail, three additional days will be added to the fourteen-day
period, meaning that you have seventeen days from the date the report and
recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).
If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday,
then the deadline is extended until the end of the next day that is not a Saturday,
Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Case: 9:17-cv-01224-GLS-DEP    Document 22    Filed 05/17/18    Page 17 of 26
Weidman v. Wilcox, Not Reported in F.Supp.3d (2014)
2014 WL 1056416

2014 WL 1056416
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Kody WEIDMAN, Plaintiff,
v.
Larry WILCOX, Defendant.

No. 6:12–CV–6524 (MAT).
|
Signed March 17, 2014.

**Attorneys and Law Firms**

Kody Weidman, New Berlin, NY, pro se.

**DECISION AND ORDER**

MICHAEL A. TELESCA, District Judge.

**I. Introduction**

**\*1** *Pro se* plaintiff Kody Weidman ("Weidman" or "Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), instituted this action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate medical treatment in violation of his rights under the Eighth Amendment. Defendant has moved to dismiss the complaint on the basis that Weidman has failed to exhaust his administrative remedies.

**II. Background**

Plaintiff has alleged the following facts, which the Court accepts as true for purposes of this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). *E. g., Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) (citations omitted). On September 3, 2012, Plaintiff was bitten on his left cheek by a spider. He reported it and was sent to sick call. However, the head nurse refused to treat him, and as a result, his left cheek "swell[ed] up and start[ed] to pus", and became painful. Dkt # 1, p. 3 of 4. Plaintiff contacted "D.I. Delmani", who in turn contacted "the sgt", who took him to the hospital at Lakeview on September 6, 2012. *Id.* There, Plaintiff was seen by a doctor who gave him "sulfamethox" and applied a heat pack to his face. The "pus and swelling then went down." *Id.*

Plaintiff did not file a grievance but instead proceeded directly to this Court, filing his complaint on September 14, 2012. Defendants filed a motion to dismiss on March 18, 2013. The complaint was dismissed for failure to prosecute on June 19, 2013, but was reinstated on June 25, 2013. The matter was transferred to the undersigned on February 20, 2014. For the reasons set forth below, the motion to dismiss is granted, and the complaint is dismissed in its entirety with prejudice.

**III. Defendant's Motion to Dismiss**

Defendant asserts that it is clear from the face of Plaintiff's complaint that he has failed to exhaust his administrative remedies by filing a prison grievance, and therefore his complaint warrants dismissal pursuant to Rule 12(b)(6). In response to Defendant's non-exhaustion argument, Plaintiff simply restates the basis for his grievance as his reason for not exhausting his administrative remedies.

**A. Administrative Exhaustion**

The Prison Litigation Reform Act of 1995 (the "PLRA"), Pub.L. No. 104–134, 110 Stat. 1321 (1996), requires an inmate to exhaust all available administrative remedies before filing suit in federal court. Specifically, Section 1997e(a) of Title 42 U.S.C. provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has ruled that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[,]" *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

**\*2** It is well established that exhaustion requires that "a prisoner must grieve his complaint about prison conditions up through the highest level of administrative review" before filing suit. *Porter v. Goord,* No. 01 Civ. 8996(NRB), 2002 WL 1402000, at \*1 (S.D.N.Y. June 28, 2002) (citing *Neal v. Goord,* 267 F.3d 116, 122 (2d Cir.2001) ("[G]rievances must now be fully pursued prior to filing a complaint in federal court."); other citation

omitted)); *see also Booth v. Churner,* 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (noting that inmate, who conceded nonexhaustion below, "did not, however, go beyond the first step, and never sought intermediate or final administrative review after the prison authority denied relief"); *Gibson v. Goord,* 280 F.3d 221, 223 (2d Cir.2002) (noting plaintiff "had not pursued the available remedy of filing a 'level two grievance' "). "Complete exhaustion" is therefore required. *Graham v. Cochran,* No. 96 Civ. 6166(LTS)(RLE), 2002 WL 31132874, at *1, 6 (S.D.N.Y.2002) (noting "action must be dismissed because [plaintiff] unreasonably failed to appeal"); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 251 (S.D.N.Y.2003) ("The standard is not one of fair notice to the defendants, or of substantial compliance.").

Prisoners in DOCCS custody must complete a three-step inmate grievance procedure, including two levels of appeals, to exhaust their administrative remedies. *See, e.g., Baskerville v. Blot,* 224 F.Supp.2d 723, 729 (S.D.N.Y.2002); N.Y. CORR. LAWW § 139; N .Y. COMP.CODES R. & REGS. tit. 7, § 701.7. The DOCCS grievance procedure is available for any number of complaints, as New York State law "permits inmates to file internal grievances as to virtually any issue affecting their confinement." *Flanagan v. Maly,* No. 99 Civ. 12336(GEL), 2002 WL 122921, at *1 (S.D.N.Y. Jan.29, 2002) (citations omitted).

Although the Second Circuit has not explicitly ruled on the issue of whether exhaustion is jurisdictional, it has held indirectly that it is not. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) (failure to exhaust is an affirmative defense); *Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (exhaustion need not be pled in the complaint); *Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (non-exhaustion may be waived). Thus, most courts in this Circuit have found that Rule 12(b)(6), rather than Rule 12(b) (1), is the proper vehicle for a defendant to use to seek dismissal of a § 1983 complaint, provided that nonexhaustion is apparent on the face of the complaint. *McCoy,* 255 F.Supp.2d at 249 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74–75 (2d Cir.1998) ("An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."); other citation omitted). If, on the other hand, "nonexhaustion is not clear from the face of the complaint, a defendant's motion

to dismiss should be converted, pursuant to Rule 12(b), to one for summary judgment limited to the narrow issue of exhaustion and the relatively straightforward questions about the plaintiff's efforts to exhaust, whether remedies were available, or whether exhaustion might be, in very limited circumstances, excused." *McCoy,* 255 F.Supp.2d at 251 (citation omitted).

**B. Analysis**

**\*3** Plaintiff's complaint, broadly construed, asserts entitlement to damages under 42 U.S.C. § 1983 for negligent medical care and deliberate indifference to a serious medical need. Because Plaintiff has not alleged that he was singled out for such treatment, his action is one brought with respect to prison conditions, and he must exhaust his administrative remedies. *Polanco v. City of N.Y. Dep't of Corr.,* No. 01 Civ. 759(AGS), 2002 WL 272401, at *2 (S.D.N.Y. Feb.26, 2002) (citing *Neal v. Goord,* 267 F.3d at 119–21 (claims of inadequate medical treatment generally relate to prison conditions)). Here, Plaintiff admitted in his complaint that there was a prison grievance procedure available to him, but he did not use it. Dkt # 1, p. 2 of 4. When asked on the form complaint why he did not file a grievance, his response reads in full as follows: "I Kody Weidman when [sic] to sick call about the spider bite on my face and they refuse to attend me." *Id.*

In certain situations, an inmate may be exempted from the exhaustion requirement. If the inmate argues that he is exempt, the court must undertake a three-part inquiry, which entails asking (1) whether administrative remedies were not in fact available; (2) whether the defendants' actions inhibited exhaustion so as to estop them from asserting non-exhaustion as an affirmative defense; or (3) whether "special circumstances" exist (e.g., an inmate reasonably misunderstood the requirements of the grievance procedures). *Hemphill v. City of New York,* 380 F.3d 680, 686 (2d Cir.2004).

Plaintiff has not specifically argued that he is exempt from grieving for any of the reasons recognized in *Hemphill.* He does not claim that the grievance process was "unavailable" to him. Plaintiff does not identify any "special circumstances" that might justify his failure to exhaust his administrative remedies. He does not specifically claim that Defendants took any steps to inhibit him from taking advantage of the grievance process. He simply restates the gravamen of his complaint (i.e., he went to sick call and did not receive treatment for his spider bite)

as his reason for not pursuing a prison grievance through the proper channels. This is plainly insufficient.

In short, because Plaintiff has failed to identify any legally cognizable reason why he could not exhaust his administrative remedies, and because he affirmatively admits that he did not exhaust them, the Court must grant Defendants' motion to dismiss his complaint. *See, e.g., Lewis v. City of N.Y.,* No. 12 CV 5850(CM), 2013 WL 3833001, at *4 (S.D.N.Y. July 23, 2013) (granting defendant's motion to dismiss where plaintiff-inmate failed to offer any excuse for failure to follow through on the grievance he filed; did not claim that grievance process was "unavailable" to him; did not identify any "special circumstances" to justify his failure to exhaust his administrative remedies; and did not specifically claim that prison officials interfered with his ability to use the grievance process).

### C. Whether Dismissal Is With or Without Prejudice

**\*4** When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice, thereby allowing the prisoner to submit a grievance to the particular institution at which the incident in question occurred. *Snider v. Melindez,* 199 F.3d at 111–12; *see also Morales v. Mackalm,* 278 F.3d 126, 128, 131 (2d Cir.2002) (*per curiam*) (broadly stating in *dictum* that any dismissal for failure to exhaust administrative remedies should be without prejudice), *abrogated* on *other grounds, Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Berry v. Kerik,* 366 F.3d 85 (2d Cir.2004), however, the Second Circuit explained that this "broad [ ] *dictum*" in *Morales* "would extend too far if applied to cases where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." 366 F.3d at 88.

Here, because Plaintiff was released from prison during the pendency of this action, administrative remedies are no longer available to him. *Finger v. Superintendent McFinnis,* 99CIV.9870(LTS)(THK), 2004 WL 1367506, \*5 (S.D.N.Y. June 16, 2004) (citing *Morris v. Eversley,*

205 F.Supp.2d 234, 241 n. 4 (S.D.N.Y.2002) (citing *Liner v. Goord,* 115 F.Supp.2d 432, 434 (S.D.N.Y.2000)) (concluding that administrative remedies were no longer available to plaintiff who had been released from prison because inmate grievance procedures, on their face, are available only to inmates and visitors, and not to former prisoners)). Since the incident of which Plaintiff complains occurred in early September 2012, and he was not released to parole supervision until March 2013, he had ample opportunity to exhaust his administrative remedies while they were still available to him as a DOCCS prisoner. *See Berry,* 366 F.3d at 88 (former inmate who had been in DOCCS custody had "ample opportunity" to use administrative remedies where he had been incarcerated for several months after the onset of the conditions that gave rise to his complaints and before his release, and then had been incarcerated for periods of nine months and three months on unrelated offenses). As discussed above, Plaintiff has offered no legally cognizable reason for his failure to exhaust, simply stating, in effect, that he failed to file a grievance because he suffered a grievable injury. Hence, the Court finds that Plaintiff's complaint should be dismissed with prejudice. *See id.* (dismissing with prejudice inmate's action for failure to exhaust, where exhaustion was required but administrative remedies had become unavailable after prisoner had ample opportunity to use them, and no special circumstances justified failure to exhaust).

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Dkt # 10) is granted, and Plaintiff's complaint (Dkt # 1) is dismissed in its entirety with prejudice. The Court hereby certifies that any appeal of this order would not be taken in good faith, and therefore it denies leave to appeal in *forma pauperis.* Any further request for in *forma pauperis* status must be made on motion to the United States Court of Appeals for the Second Circuit. The Clerk of the Court is requested to close this case.

**\*5 IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1056416

---

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 1977972
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jason S. PLANCK, Plaintiff,
v.
SCHENECTADY COUNTY, et al., Defendants.

No. 1:12–CV–0336(GTS/DRH).
|
June 1, 2012.

**Attorneys and Law Firms**

Jason S. Planck, of Counsel, Schenectady, NY, pro se.

Goldberg Segalla LLP, Jonathan M. Bernstein, Esq., William J. Greagan, Esq., of Counsel, Albany, NY, for Defendants.

### *MEMORANDUM–DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

 **\*1** Currently pending before the Court, in this *pro se* civil rights action filed by Jason S. Planck ("Plaintiff") against Schenectady County and fifteen of its legislators ("Defendants"), are the following four motions: (1) Plaintiff's motion for reconsideration of the Court's Decision and Order of February 29, 2012, denying his motion for a temporary restraining order (Dkt. No. 10); (2) Plaintiff's motion for a report from the Court regarding the status of his motion for reconsideration (Dkt. No. 30); (3) Plaintiff's motion for a preliminary injunction (Dkt. No. 4); and (4) Defendants' cross-motion to dismiss Plaintiffs' Complaint (Dkt. No. 17). For the reasons set forth below, Plaintiffs' three motions are denied; and Defendants' cross-motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Claims
Generally, when construed with the utmost of special liberality, Plaintiff's Complaint asserts three civil rights claims against Defendants-one claim asserting a violation of Rehabilitation Act of 1973, and two claims asserting violations of the Americans with Disabilities Act-arising from Schenectady County's ("the County")

approval of a project labor agreement (to construct a new nursing home) that permits the hiring of only unionized construction workers, thus discriminating against qualified nonunionized construction workers with disabilities. (*See generally* Dkt. No. 1.) Because this Decision and Order is intended primarily for the review of the parties, and because Defendants (in their memorandum of law) accurately describe the claims and factual allegations asserted in Plaintiff's Complaint, the Court will not describe those claims and factual allegations in detail in this Decision and Order. Rather, the Court will refer the reader to pages 1 through 3 of Defendants' memorandum of law and paragraphs 2 through 4, and 7 through 44, of Plaintiff's Complaint. (Dkt. No. 17, Attach. 11, at 6–8 [attaching pages "1" through "3" of Defs.' Memo. of Law]; Dkt. No. 1, at ¶¶ 2–4, 7–44.)

### B. Briefing on the Parties' Motions
Because the parties have demonstrated in their memoranda of law an adequate understanding of the legal arguments asserted in each other's motions, the Court need not, and does not, describe in detail those arguments in this Decision and Order. Rather, the Court will simply make two points.

First, generally, in their cross-motion to dismiss, Defendants assert the following three arguments: (1) Plaintiff's Complaint should be dismissed under Fed.R.Civ.P. 12(b)(1), because (a) the Court lacks subject-matter jurisdiction over Plaintiff's challenge to the County's project labor agreement (which must be presented by Plaintiff in an Article 78 proceeding in state court), and (b) Plaintiff, who is not a qualified construction worker but merely a taxpayer, lacks standing to challenge the County's approval of the project labor agreement; (2) in the alternative, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), because Plaintiff has failed to allege facts plausibly suggesting the elements of a claim under either Rehabilitation Act of 1973 or the Americans with Disabilities Act (particularly the element requiring that he be a *qualified* individual with a disability); and (3) in the alternative, Plaintiff's claims against the legislative Defendants should be dismissed for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6), because, based on Plaintiff's own factual allegations, those claims are either duplicative of Plaintiff's claims against the County or barred as a

2012 WL 1977972

matter of law by the doctrine of legislative immunity. (Dkt. No. 17, Attach. 11, at 8–22 [attaching pages "3" through "17" of Defs.' Memo. of Law].)

**\*2** Second, in this District, when a party files a dispositive motion (such as a motion for a preliminary injunction), [1] that party is not entitled to file a surreply. N.D.N.Y. L.R. 7.1(b)(1). Furthermore, when a party files a nondispositive motion (such as a motion for reconsideration), that party is not even entitled to file a reply, without prior leave of the Court. N.D.N.Y. L.R. 7.1(b)(2). Finally, when a party files a cross-motion (such as a cross-motion to dismiss), that party is not entitled to file a reply on its cross-motion without prior leave of the Court. N.D.N.Y. L.R. 7.1(c). Even if it were permitted to file a reply, that reply may address only the party's own cross-motion, and not the opponent's original motion; otherwise, the "reply" would, in part, constitute a surreply. [2] Here, the parties have violated each of these rules, in addition to violating several filing deadlines. (Dkt. Nos. 23, 25, 31, 32; *see also* Text Notices filed March 9, 2012, and Apr. 2, 2012.) [3] As a result, the submissions contained in Docket Numbers 23, 25, 31 and 32 will not be considered by the Court. The Court would add only that, even if it were to consider the submissions, that consideration would not change the outcome of this Decision and Order.

## II. ANALYSIS

### A. Motion for Reconsideration

Generally, there are only three grounds upon which a district court may justifiably reconsider its previous ruling: (1) an intervening change in controlling law, (2) new evidence, or (3) a demonstrated need to correct a clear error of law or to prevent manifest injustice. *U.S. v. Sanchez,* 35 F.3d 673, 677 (2d Cir.1994), *cert. denied,* 514, U.S. 1038 (1995).

Here, after carefully considering the matter, Plaintiff's motion for reconsideration is denied for each of the numerous reasons offered by Defendants in their memorandum of law: Plaintiff has not satisfied the above-described standard. (Dkt. No. 17, Attach. 11, at 15–18 [attaching pages "10" through "13" of Defs.' Memo. of Law].)

The Court would add two alternative grounds for the denial of Plaintiff's motion. First, Plaintiff's motion is

unsupported by a memorandum of law that is separate and apart from an affidavit, in violation of Local Rule 7.1. The Court notes that an affidavit may not contain legal argument. N.D.N.Y. L.R. 7.1(a)(2). Second, Plaintiff's motion is moot in that it seeks an order restraining Defendants from acting between a discrete time period (i.e., the time of the Court's decision on Plaintiff's motion a temporary restraining order and the time of the Court's decision on Plaintiff's motion for a preliminary injunction), which has, as of the date of this Decision and Order, already expired.

Finally, the Court notes that Plaintiff's motion for reconsideration also requested oral argument, and/or an expedited decision, on Plaintiff's motion for reconsideration. That request is denied as unsupported by a showing of cause and/or moot.

### B. Motion for a Status Report from the Court
**\*3** After carefully considering the matter, Plaintiff's motion for a status report from the Court is denied as unsupported by a showing of cause and/or moot.

### C. Motion for a Preliminary Injunction
Generally, the issuance of a preliminary injunction pursuant to Fed.R.Civ.P. 65 depends on the movant's demonstration of (1) irreparable harm and (2) either a likelihood of success on the merits, or a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Tom Doherty Assoc., Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33 (2d Cir.1995).

Here, after carefully considering the matter, Plaintiff's motion for a preliminary injunction is denied for each of the numerous reasons offered by Defendants in their memorandum of law: Plaintiff has not satisfied the above-described standard: on the current record, Plaintiff has not established either irreparable harm or a likelihood of success on the merits. (Dkt. No. 17, Attach. 11, at 18–22 [attaching pages "13" through "17" of Defs.' Memo. of Law] .) Of particular concern to the Court is this latter deficiency (i.e., Plaintiff's failure to show a likelihood of success on the merits), which is exacerbated by the various substantive pleading defects in his Complaint. The Court would add only that, even setting aside these pleading defects, following the Court's denial of Plaintiff's motion for a temporary restraining order, Plaintiff did

not supplement the record with the sufficient evidence to warrant a contrary finding. (*Compare* Dkt. No. 1 *and* Dkt. No. 4 *with* Dkt. No. 10 *and* Dkt. No. 22.)

### D. Defendants' Cross–Motion to Dismiss

**1. Legal Standard Governing Dismissal for Lack of Subject–Matter Jurisdiction Pursuant to Fed.R.Civ.P. 12(b)(1)**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir.2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova,* 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113 (citing *Malik v. Meissner,* 82 F.3d 560, 562 [2d Cir.1996] ). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir.2005) (citing *Makarova,* 201 F .3d at 113).

The Court notes that challenges to a litigant's standing are properly raised on a motion for lack of subject-matter jurisdiction. *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88–89 & n. 6 (2d Cir.2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), ... the proper procedural route is a motion under Rule 12(b)(1)."); *A.C. v. Mattingly,* 05–CV–2986, 2007 WL 894268, at \*3 (S.D.N.Y. March 20, 2007) ("The argument of lack of standing is properly raised under Rule 12(b)(1).").

**2. Legal Standard Governing Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted, Pursuant to Fed.R.Civ.P. 12(b)(6)**

**\*4** It has long been understood that a dismissal for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.

*Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted].[4]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949–52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of

course) that all the allegations in the complaint are true. *Id.* [citations omitted]. [5]

**\*5** As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [6] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law— first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. [7]

In reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), [8] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [9] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [10] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading

are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [11] Moreover, in the Second Circuit, a *pro se* plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of his complaint-to the extent those papers are consistent with the allegations in the complaint. [12]

### 3. Analysis

**\*6** After carefully considering the matter, and applying the above-described legal standard, Plaintiff's motion for a preliminary injunction is denied for each of the three alternative reasons offered by Defendants in their memorandum of law. *See, supra,* Part I.B. of this Decision and Order (summarizing those reasons).

The Court would add only two points. First, although Plaintiff attaches 97 pages of exhibits in his opposition to Defendants' motion to dismiss for failure to state a claim, and a 23–page memorandum of law, the Court either (1) does not construe the allegations in those documents as consistent with the allegations in Plaintiff's Complaint or (2) finds the allegations in those documents to be insufficient to rescue the pleading defects contained in Plaintiff's claims. Second, although Plaintiff appears to now largely hinge his claims on *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999), and/or Fed.R.Civ.P. 23, the Court finds that reliance to be misplaced. (Dkt. No. 22, Attach. 1, at 4–8 .)

### 4. Whether Dismissal Should Be With or Without Prejudice

Generally, when a district court dismisses a *pro se* action *sua sponte*, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. [13]

Moreover, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted). [14] This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355 at * 1.

Here, the Court finds that the pleading deficiency in Plaintiff's claims are substantive and not merely formal. As an initial matter, lack of subject-matter jurisdiction is generally viewed as a substantive defect. [15] Even if the Court did possess subject-matter jurisdiction over Plaintiff's claims, the pleading defects in those detailed claims still appear substantive. For example, it does not appear to the Court that granting Plaintiff leave to amend his claims would likely be productive. Setting aside the fact that he has failed to correct those defects despite having had months in which to do so, the fact remains that he appears to insist on asserting nonactionable claims, rendering any amendment futile. (*See generally* Dkt. No. 22, Attach. 1.) As a result, the Court declines to afford Plaintiff an opportunity to amend his Complaint prior to dismissal.

However, because Defendants argued persuasively that Plaintiff should have presented his challenge to the County's project labor agreement in an Article 78 proceeding in state court, the Court dismisses Plaintiff's claims against the County without prejudice to refiling in state court within thirty (30) days of this Decision and Order. [16]

**\*7  ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion for reconsideration of the Court's Decision and Order of February 29, 2012, denying his motion for a temporary restraining order (Dkt. No. 10) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for a report from the Court regarding the status of his motion for reconsideration (Dkt. No. 30) is ***DENIED;*** and it is further

**ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 4) is ***DENIED;*** and it is further

**ORDERED** that Defendants' cross-motion to dismiss Plaintiffs' Complaint (Dkt. No. 17) is ***GRANTED;*** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is ***DISMISSED* with prejudice EXCEPT** for his claims against Schenectady County, which are ***DISMISSED* without prejudice** to refiling in state court within **THIRTY (30) DAYS** of this Decision and Order.

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) (3), *that any appeal taken from this Decision and Order would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1977972

Footnotes

1   *See Odom v. Senkowski,* 96–CV–0554, 1997 WL 458450, at *1 (N . D.N.Y. Aug. 7, 1997) (Pooler, D.J.) ("Because Odom's request for a preliminary injunction is a dispositive motion, the magistrate judge's recommendations require de novo review.").

2   *See Carlwood Dev. Inc. v. U.S.,* 10–CV–1773, 2011 WL 69374, at *1 (D.Nev. Jan. 10, 2011) (denying petitioner's motion to strike government's improper "cross-motion"—which did not "address[ ] any matters even remotely indicative of a motion for summary judgment" but rather merely responded to the matters raised by the petitioners in their opening brief- because "rather than striking any portion of the ['cross-motion'] itself, the Court will merely construe [it] as only a response to the [petitioner's] opening brief, and not a cross-motion," and strike the government's unauthorized reply on its improper cross-motion as "nothing more than a disingenuous attempt to get the last word").

3    The Court notes that, on February 28, 2012, Plaintiff receive a courtesy copy of the Local Rules of Practice for this Court.
     (*See* Docket Entry dated Feb. 28, 2012; Dkt. No. 9.)

4    *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to
     answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned
     the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function
     of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him
     to answer and prepare for trial.") [citations omitted].

5    *See also Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard
     of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a
     claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ).

6    *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion
     to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted]
     (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,*
     521 F.3d 202, 215–16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim
     of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders'
     denial of her home equity loan application) [emphasis added].

7    For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant
     time period, he suffered from hepatitis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious
     medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199–
     2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and
     "substantial injury" as a result of the termination of his hepatitis C medication (a requirement that had been imposed by the
     district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief.
     Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found
     that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See,
     e.g., Rose v. Alvees,* 01–CV–0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02–CV–1182,
     2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002);
     *McKenna v. Wright,* 01–CV–6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99–CV–3208,
     2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was
     required to allege some sort of fact.

8    *Sealed Plaintif v. Sealed Defendant # 1,* No. 06–1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth
     v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

9    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,*
     404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord,
     Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) [unpublished disposition
     cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit];
     *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

10   *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who
     do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil
     litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,*
     422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules
     of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se*
     status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted],
     *accord, Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983); *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005)
     (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes
     either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

11   *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all
     purposes."); *L–7 Designs, Inc. v. Old Navy, LLC,* No. 10–573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining
     that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary
     under Fed.R.Civ.P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint
     or answer, [2] documents incorporated by reference in the complaint and provided by the parties), [3] documents that,
     although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take
     judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir.2010)
     (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged

in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

12    See *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 n. 1 (2d Cir.1998) (per curiam) ("[W]e deem Drake's complaint to include the facts contained in his memorandum of law filed in response to Delta's 1996 motion to dismiss."); *Gill v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) ( "In his affidavit submitted in opposition to defendants' motion to dismiss, Gill asserts that Mooney's actions amounted to deliberate and willful indifference. Liberally construed under *pro se* pleading standards, Gill's allegations against Mooney involve more than ordinary lack of due care for the prisoner's interests or safety, ... and therefore state a colorable claim under the Eighth and Fourteenth Amendments.") (internal quotation marks and citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.) ("[I]n cases where *a pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they "are consistent with the allegations in the complaint.") (collecting district court cases), *vacated on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004) (Hurd, J.).

13    *Shuler v. Brown,* 07–CV–0937, 2009 WL 790973, at *5 & n. 25 (N.D.N.Y. March 23, 2009) (McAvoy, J., adopting Report–Recommendation by Lowe, M.J.) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer,* 07–CV–1264, 2009 WL 632890, at *5 & n. 20 (N.D.N.Y. March 9, 2009) (Hurd, J., adopting Report–Recommendation by Lowe, M.J.); *Abascal v. Hilton,* 04–CV–1401, 2008 WL 268366, at *8 (N.D.N.Y. Jan. 130 2008) (Kahn, J., adopting, on de novo review, Report–Recommendation by Lowe, M.J.); *see also Yang v. New York City Trans. Auth.,* 01–CV–3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

14    *Accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ( "[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

15    See *U.S. ex rel. Phipps v. Comprehensive Comty. Dev. Corp.,* 152 F.Supp.2d 443, 455 (S.D.N.Y.2001) ("[I]t is not appropriate to grant Phipps's request [for leave to amend the Complaint] because the Court has determined that it does not have subject matter jurisdiction over this action."); *Chan v. Reno,* 916 F.Supp. 1289, 1302 (S.D.N.Y.1996) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis. As will be discussed herein, [the proposed amended complaint] ... presents a non-justiciable claim and fails to present this Court with subject matter jurisdiction. Therefore, because [the proposed amended complaint] would be subject to a successful motion to dismiss ..., amendment would be futile.").

16    The Court notes that, in addition, it expresses no opinion as to the merits of any claim, arising in the future, that Plaintiff may or may not bring pursuant to *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999).

**End of Document**                                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.