IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

BRANDON GRANT,

                 Plaintiff,

       v.

KOPP, Correction Officer, Shawangunk
Correctional Facility,

                Defendant.

Civil Action No.
9:17-CV-1224 (GLS/DEP)

---

APPEARANCES:

| FOR PLAINTIFF: | OF COUNSEL: |
|---|---|
| BOTTAR, LEONE LAW FIRM<br>120 Madison Street<br>Suite 1600<br>AXA Tower II - 16th Floor<br>Syracuse, NY 13202 | AARON J. RYDER, ESQ. |

FOR DEFENDANT:

| | |
|---|---|
| HON. LETITIA JAMES<br>New York State Attorney General<br>The Capitol<br>Albany, NY 12224 | HELENA O. PEDERSON, ESQ.<br>Assistant Attorney General |

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This is a civil rights action brought by *pro se* plaintiff Brandon Grant, a New York State prison inmate, pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff asserts an Eighth Amendment excessive force claim against defendant D. Kopp, a corrections officer at the facility in which plaintiff was confined at the relevant times. In defense of that claim, defendant has argued, *inter alia*, that plaintiff failed to exhaust available administrative remedies prior to commencing this suit.

In order to permit the court to resolve the exhaustion defense prior to trial, the assigned trial judge referred the matter to me for the purpose of holding an evidentiary hearing and issuing a report and recommendation addressing the issue. Based upon the evidence adduced at that hearing, I conclude that plaintiff failed to exhaust administrative remedies that were fully available to him prior to commencing this action. The following represents my recommended findings of fact and conclusions of law.

## I.   BACKGROUND

Plaintiff is currently being held in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See generally* Dkt. No. 1. While he is currently confined at another facility, at

the times relevant to his remaining claim, plaintiff was confined the Shawangunk Correctional Facility ("Shawangunk"), which is located in Wallkill, New York. *Id.*

On August 7, 2017, following a fall sustained by Grant while confined in a special housing ("SHU") shower unit and in light of a suspected drug overdose, plaintiff was confined to an infirmary cell at Shawangunk. Dkt. No. 1 at 8. According to plaintiff, while in that cell after he pressed the call button twice for assistance, defendant Kopp, a corrections officer assigned to the infirmary unit, responded and proceeded to assault Grant. *Id.* at 8-9. Defendant Kopp then threatened plaintiff with further violence if he pressed the call button again. *Id.* at 8.

II.   PROCEDURAL HISTORY

This action was commenced on or about November 8, 2017 by the filing of a complaint that is dated November 1, 2017, and, according to a postmarked envelope, was mailed to the court on November 7, 2017. Dkt. No. 1. Plaintiff's complaint was accompanied by a motion for leave to proceed *in forma pauperis*. Dkt. Nos. 2, 5, 6. On December 8, 2017, Senior District Judge Gary L. Sharpe issued a decision and order in which he granted plaintiff leave to proceed without the prepayment of fees and, following an initial review of the complaint pursuant to 28

U.S.C. §§ 1915(e), 1915A, dismissed all of plaintiff's causes of action with the exception of an excessive force claim asserted against defendant Kopp. Dkt. No. 8 at 12-13.

On February 16, 2018, defendant Kopp filed a motion to dismiss plaintiff's excessive force claim, arguing that the face of plaintiff's complaint makes it clear that he did not fully exhaust the available administrative remedies prior to the commencement of this proceeding. *See generally* Dkt. No. 19. On May 17, 2018, I issued a report and recommendation, in which I stated, in relevant part, as follows:

> In this case, defendant Kopp acknowledges that plaintiff alleges that he filed a grievance concerning defendant Kopp's actions. Dkt. No. 19-1 at 7. Citing page eight of plaintiff's complaint, defendant Kopp further argues that the grievance was "still pending at the time [plaintiff] brought suit[.]" *Id.* at 5. It is apparent from plaintiff's complaint, however, that his statement concerning a still-pending grievance was in reference to his grievance filed against the Shawangunk employees who allegedly dragged him out of the shower and failed to provide him with appropriate attention for his injuries. Dkt. No. 1 at 7-8. Plaintiff's complaint clearly makes a separate reference to a grievance filed by him against defendant Kopp. *See id.* at 9 ("[S]o I wrote [defendant Kopp] up myself and grieved it[.]"). *Id.* at 9. Plaintiff's complaint does not reveal the status of that grievance.
>
> Plaintiff's opposition to defendant's motion is equivocal concerning the status of his grievance against defendant Kopp. On the one hand, plaintiff claims that the sixty-day deadline for the CORC to

> respond to his grievance had expired by the time
> this lawsuit was filed, inferring that he had not yet
> received a response from the CORC. Dkt. No. 21 at
> 1. Further on in his response, plaintiff suggests that
> all of his papers concerning the grievance were
> confiscated or destroyed by corrections personnel,
> implying that the IGP may not have been available
> to plaintiff and triggering the PLRA's sole exception
> to the exhaustion requirement. *Id.*
>
> These uncertainties illustrate the danger of
> deciding the issue of exhaustion on a motion to
> dismiss in all but the clearest of cases. *See, e.g.,
> Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d
> 529, 546 (S.D.N.Y. 2015). Given the circumstances
> of this case, I conclude that the issue of exhaustion
> is better determined on a motion for summary
> judgment, with the benefit of a fully developed
> record illuminating the circumstances surrounding
> plaintiff's efforts to grieve defendant Kopp's actions
> toward him. I therefore recommend that defendant's
> motion to dismiss be denied.

Dkt. No. 22 (footnote omitted). Judge Sharpe adopted that report and

recommendation in its entirety on June 15, 2018. Dkt. No. 23.

On July 13, 2018, defendant requested an evidentiary hearing

regarding the issue of exhaustion. Dkt. No. 26. Based upon that request,

the matter was referred to me for the purpose of conducting an

evidentiary hearing, pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir.

2011), in order to determine whether plaintiff did in fact exhaust available

administrative remedies with respect to his claim before filing suit and, if

not, whether his failure to fulfill the exhaustion requirement should be excused. Dkt. No. 27.

An evidentiary hearing was subsequently conducted by the court on November 30, 2018. *See generally* Dkt. No. 42. Plaintiff was represented at that hearing by *pro bono* counsel assigned by the court.[1] Following the hearing and the filing of the transcript, the parties submitted post-hearing memoranda addressing the exhaustion issue. Dkt. Nos. 43, 44. The matter is now ripe for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Exhaustion of Remedies: Controlling Legal Principles

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

---

[1]    On September 17, 2018, Aaron J. Ryder, Esq. was appointed as *pro bono* counsel to plaintiff for the limited purpose of representing him at exhaustion hearing. Dkt. No. 29. The court extends its thanks to Attorney Ryder for his competent and professional representation of plaintiff in this matter.

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is mandatory and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136 S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *see also Wilson v. McKenna*, 661 F. App'x 750, 752 (2d Cir. 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).[2]

---

[2] While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion " 'in a substantive sense,' " an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d

In New York, the DOCCS has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC")[3] have up to sixteen days after the grievance is filed to informally resolve the issue. 7 N.Y.C.R.R. § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. 7 N.Y.C.R.R. § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written

_____

691, 697-98 (2d Cir. 2004) (emphasis omitted)).

[3]    The IGRC is comprised of "two voting inmates, two voting staff members, and a non- voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal.[4]  7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of the appeal. 7 N.Y.C.R.R. § 701.5(d)(2)(i), (ii).

Where an inmate's grievance complains of employee harassment, the grievance is forwarded directly to the superintendent, bypassing the IGRC review. 7 N.Y.C.R.R. § 701.8(b), (c). The superintendent then has twenty-five days from the date of its receipt to render a decision. 7 N.Y.C.R.R. § 701.8(g). An inmate may appeal the superintendent's decision to the CORC within seven days of its receipt. 7 N.Y.C.R.R. § 701.8(h).

---

[4]     Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified period of time. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/or superintendent do not timely respond, an inmate is permitted to appeal "to the next step." 7 N.Y.C.R.R. § 701.6(g)(2). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those,

10

grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA.[5] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

B.    Burden of Proof with Respect to Exhaustion

---

[5]    According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

In this case, defendant contends that although plaintiff could have fully pursued his administrative remedies prior to the commencement of this action, he failed to do so. *See generally* Dkt. No. 44. While plaintiff acknowledges that he failed to fully exhaust his remedies, he contends that he should be excused on the basis that those administrative remedies were not fully available to him at the relevant times. *See generally* Dkt. No. 43. Prior to addressing these arguments, the court must determine who, as between plaintiff and defendant, bears the burden of proof with respect to the exhaustion defense.

Because the failure to exhaust administrative remedies is an affirmative defense and not a pleading requirement, *see Jones v. Bock*, 549 U.S. 199, 216 (2007); *Williams*, 829 F.3d at 123, the party asserting failure to exhaust administrative remedies typically bears the ultimate burden of proving its essential elements by a preponderance of the evidence. *See, e.g.*, *Hamlet v. Stotler*, No. 17-CV-0939, 2018 WL 2729263, at *5 (N.D.N.Y. Apr. 27, 2018) (Dancks, M.J), *report and recommendation adopted by* 2018 WL 2727875 (N.D.N.Y. Jun 6, 2018) (Sharpe, J.); *Soria v. Girdich*, No. 04-CV-0727, 2007 WL 4790807, at *2 (N.D.N.Y. Dec. 6, 2007) (DiBianco, M.J.) (citing *McCoy v. Goord*, 255 F. Supp. 2d 233, 247 (S.D.N.Y. 2003)); *Howard v. Goord*, No. 98-CV-7471,

1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In *Nelson v. Plumley*, No. 12-CV-0422, 2015 WL 4326762 (N.D.N.Y. Jul. 14, 2015) and *Bailey v. Fortier*, No. 09-CV-0742, 2012 WL 6935254 (N.D.N.Y. Oct. 4, 2012), *report and recommendation adopted by*, 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013), I acknowledged the existence of an ambiguity with respect to the appropriate burdens of production and persuasion in the context of exhaustion. *Nelson*, 2015 WL 4326762, at *7; *Bailey*, 2012 WL 6935254, at *5-*6; *see also Calloway v. Grimshaw*, No. 09-CV-1354, 2011 WL 4345299, at *5 & n. 5 (N.D.N.Y. Aug. 10, 2011), *report and recommendation adopted* by 2011 WL 4345296 (N.D.N.Y. Sep. 15, 2011) (McAvoy, J.); *Murray v. Palmer*, No. 03-CV-1010 , 2010 WL 1235591, at * 4 & n. 17 (N.D.N.Y. Mar. 31, 2010). In particular, several district court decisions, "while referencing the burden of proof applicable to an affirmative defense, seem to primarily address an inmate's burden of *production*, or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or special circumstances, rather than speaking to the ultimate burden of *persuasion*." *Nelson*, 2015 WL 4326762, at *7 (emphasis in original); *see Bailey*, 2012 WL 6935254, at *6.

I ultimately concluded in *Nelson* that although the burden of

13

production may shift to the plaintiff to demonstrate unavailability, the ultimate burden of proof remains with the defendant at all times. *Nelson*, 2015 WL 4326762, at *7; *Bailey*, 2012 WL 6935254, at *6; *see Puga v. Choto*, No. 11-CV-0070, 2014 WL 675824, at *5 (N.D.N.Y. Feb. 21, 2014) (McAvoy, J., *adopting report and recommendation by* Hummel, M.J.). While the *Nelson* and *Bailey* decisions were decided prior to *Ross* - and therefore applied the *Hemphill* factors - given that "unavailability" is a critical and central element of the legal standard outlined by both *Hemphill* and *Ross*, I see no reason to depart from the reasoning outlined in *Nelson* and *Bailey*. *See Coleman v. Nolan*, No. 15-CV-40, 2018 WL 4732778, at *4 n. 2 (N.D.N.Y. Oct. 2, 2018); *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013). Accordingly, I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it. *See Smith*, 985 F. Supp. 2d at 284.

C.  Evidence Adduced at the Hearing[6]

According to the evidence and testimony presented by the parties during the recent hearing, on or about August 20, 2017, while he was

---

[6]  The transcript of the evidentiary hearing, held on November 30, 2018, Dkt. No. 42, will be cited as "Tr. _."

confined to the SHU at Shawangunk, plaintiff filed a grievance with respect to the underlying incident; that grievance was assigned Grievance No. SHG-30839-17. Tr. 9-10; *see* Exhs. P-7, D-5. Because plaintiff's grievance involved an allegation of employee harassment, or a "code 49," it bypassed IGRC review at step one of the IGP and was forwarded directly to the superintendent of Shawangunk on August 22, 2017. Tr. 89; Exhs. P-6, P-7, D-5; *see* 7 N.Y.C.R.R. § 701.8.

Although the superintendent was required to issue a decision on plaintiff's grievance within twenty-five calendar days of receiving it, *see* 7 N.Y.C.R.R. § 701.8(f), he failed to issue a decision until November 8, 2017.[7]  Tr. 15-16, 65. By that time, plaintiff has been transferred out of Shawangunk and into the Auburn Correctional Facility, located in Auburn, New York. Tr. 42; *see also* Exh. D-8. On November 17, 2017, after receiving the unfavorable determination from the superintendent of Shawangunk, plaintiff filed an appeal to the CORC. Tr. 21-22; Exhs. P-5, D-6.

Despite not receiving the superintendent's determination until some

---

[7]    Because the superintendent failed to issue a determination within twenty-five-day period provided for by the IGP, plaintiff could have taken an appeal directly to the CORC. 7 N.Y.C.R.R. § 701.8(g). It is undisputed, however, that plaintiff did not appeal to the CORC until after receiving the superintendent's determination. *See* Exh. D-4.

unspecified point after November 8, 2017, plaintiff nonetheless proceeded to initiate the instant action. Exhs. P-1, D-1. Plaintiff's complaint, which is dated November 1, 2017, and was mailed on November 7, 2017, was filed with the court on November 8, 2017. Exhs. P-1, D-1; *see also* Dkt. No. 1. Plaintiff concedes that he filed the present action prior to appealing the superintendent's determination to the CORC; accordingly, it is not seriously disputed that plaintiff failed to fulfill the steps required under the IGP to exhaust administrative remedies prior to commencement of suit. Tr. 38; *see also* Dkt. No. 43 at 8 ("In the case at bar[,] the chronology of events demonstrates that Plaintiff filed the Complaint on November 8, 2017, prior to appealing his Grievance to CORC."). I therefore recommend a finding that defendant has proven by a preponderance of the evidence that plaintiff failed to exhaust the administrative remedies provided under the IGP prior to the commencement of suit.

Such a finding would leave one final inquiry for the court: whether the IGP was not "actually available" to plaintiff, in which case he should be excused from his failure to fully exhaust the administrative remedies. *Williams*, 829 F.3d at 123 (citing *Ross*, 136 S. Ct. at 1858-59). In that respect, plaintiff's presents two separate arguments as to why

16

administrative remedies were effectively unavailable to him. *See generally* Dkt. No. 43. First, he argues that prison officials attempted to thwart him from taking advantage of the grievance process. *Id.* at 12. Second, he argues that he had a less than complete understanding of the grievances process, a reality that was compounded by his inability to request relevant grievance materials as an inmate confined a facility SHU. *Id.* at 8-12. After carefully considering the evidence adduced by the parties, while not fully unsympathetic to plaintiff's circumstances, I recommend that his arguments be rejected as unavailing.

### 1.   Intimidation or Threats of Retaliation

First, plaintiff claims that he was effectively prevented from utilizing the IGP because of intimidation by prison officials at Shawangunk. In *Ross*, the Supreme Court expressly acknowledged that specific threats of retaliation or intimidation by prison officials toward an inmate may render administrative remedies functionally unavailable to that individual. *See Ross*, 136 S. Ct. at 1860 n.3; *see Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (holding "administrative remedies may . . . be deemed unavailable if the plaintiff can demonstrate other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable"); *Williams*, 829 F.3d at 124

("[A]n administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' ").

Even in the aftermath of *Ross*, however, the Second Circuit has concluded that when an inmate files a grievance, notwithstanding the threats of retaliation and intimidation of which that inmate complains, the failure to fully exhaust under the PLRA will not be excused on this ground. *McNab v. Doe*, 686 F. App'x. 49, 51 (2d Cir. 2017), *affirming* 2016 WL 324994 (N.D.N.Y. Jan. 27, 2016) (Suddaby, C.J.); *see also Grafton v. Hesse*, 2017 WL 9487092, at *7 (E.D.N.Y. Aug. 25, 2017). In reaching that conclusion, the Second Circuit made the following observation:

> [Plaintiff] asserted that defendants tried to intimidate him, and intimidation can excuse the failure to exhaust. *Ross*, 136 S.Ct. at 1860. However, none of the actions allegedly taken by the defendants actually prevented [plaintiff] from submitting his complaint letter. *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (failure to exhaust not excused by defendants' actions where plaintiff 'point[ed] to no affirmative act by prison officials that . . . prevented him from pursuing administrative remedies'). [Plaintiff] was able to take the first step in the grievance process, and nothing in the record suggests he was intimidated from taking the next step (appealing the rejection of his informal grievance).

*McNab*, 686 F. App'x at 51.

In this case, plaintiff testified that in the immediate aftermath of the alleged assault on August 7, 2017, and before he even filed the grievance, he was approached by defendant Kopp's supervisor and told to "leave it alone, [he would] handle it."[8]  Tr. 15-17. Plaintiff believed that this meant he should "drop and leave it alone." Tr. 17-18. Despite a vague warning to "leave it alone," on August 20, 2017, plaintiff in fact proceeded to file a grievance regarding the underlying incident. Tr. 16-20; P-7, D-5. Plaintiff testified that after he did "get a chance to file a grievance" with prison officials at Shawangunk, he

> was pulled out [of] my cell, harassed, papers missing, grievances ripped, . . . officers verbally threatening me or even try to bribe me with extra trays, extra food trays, and et cetera, going on, and food was tampered with when I denied certain things, it was ongoing things. My witnesses [were] told not to go along with it, they have extra rec time, extra TV time.

Tr. 17. Plaintiff's cell was left in disarray on multiple occasions. Tr. 19-20.

---

[8]    There is some suggestion that plaintiff unsuccessfully attempted to file a grievance prior to August 20, 2017. Tr. 8. Indeed, the grievance at issue states:

> I told [Sgt.] Kluck and nothing was done so I wrote a written [grievance], which just go back to me to put on these grievance complaint [forms].

Exhs. P-5; D-4.

When plaintiff was asked to clarify the time frame in which these actions transpired, he testified that it occurred between the date of defendant's alleged use of excessive force and September 1, 2017, the date that plaintiff was transferred out of Shawangunk. *Id.* at 18-20; Exh. D-8. Although plaintiff asserted that he was subjected to "intimidation" by prison officials as soon as they were made aware of the incident, it is clear that these alleged actions did not "actually prevent[]" Grant from availing himself of the grievance procedure. *McNab*, 686 F. App'x. at 51. Despite any threats that plaintiff allegedly perceived, he nonetheless filed a grievance, while housed in the SHU at Shawangunk, and then successfully appealed that grievance to the CORC, while housed in keeplock at an entirely different facility. Exhs. P-7, D-5; *see Newman v. Duncan*, No. 04-CV-395 (TJM/DRH), 2007 WL 2847304, at *4 (N.D.N.Y. Sept. 26, 2007) (finding that administrative remedies were available to inmate where he was transferred out of facility where officer had threatened him).

Plaintiff's testimony at the exhaustion hearing amounts to nothing more than a "generalized fear of retaliation," which is not sufficient to excuse the failure to exhaust his administrative remedies. *Bookman v. Lindstrand*, No. 15-CV-1542, 2018 WL 3121688, at *10-*11 (N.D.N.Y.

20

Feb. 14, 2018) (Peebles, M.J.) (collecting cases), *report and recommendation adopted by* 2018 WL 1470585 (N.D.N.Y. Mar. 26, 2018) (D'Agostino, J.). Although plaintiff testified that a prison official told him on one occasion to "leave it alone" and that papers in his cell were either missing or in disarray at some unspecified point, the absence of any specific, affirmative threats of retaliation—particularly when these generalized threats did not actually prevent[]" plaintiff from successfully utilizing the grievance procedure—leads me to conclude that plaintiff has failed to meet his burden of production with respect to unavailability. *See, e.g.*, *Rodriguez v. Cnty. of Suffolk*, No. CV 13-2070(SJF)(GRB), 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made." (quoting *Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009)).

### 2.    Lack of Understanding of the IGP

In addition to unspecified threats or intimidation, plaintiff also claims that he was unaware of or otherwise did not understand the mechanics of the IGP. Dkt. No. 43 at 7-13. However, "[p]laintiff's less than complete understanding of the purpose of the administrative remedies does not render them not 'capable of use.' " *Davis v. Doe*, No. 16-CV-0994, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017)

(Stewart, M.J.) (citing *Ross*, 136 S. Ct. at 1859); *see also Rawls v. Rosenfield*, No. 16-CV-0582, 2017 WL 7050648, *8 (N.D.N.Y. Nov. 28, 2017); *see Galberth v. Washington*, No. 14-CV-0691, 2017 WL 3278921 (S.D.N.Y. Jul, 31, 2017) ("A plaintiff post-*Ross* must show more than mere unawareness of an existing grievance procedure; a plaintiff must show that he was unaware because, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation.' "); *Contino v. City of New York*, No. 11-CV- 8537, 2013 WL 4015816, at *7 (S.D.N.Y. Aug. 7, 2013) ("A plaintiff's failure to understand the contours of the PLRA is not a special circumstance excusing compliance with the PLRA's exhaustion requirement.").

During the exhaustion hearing, plaintiff testified that reading and writing were difficult for him. Tr. 31. Plaintiff claimed that as a result of this, he did not have a "full understanding of everything that [he] had to do to make sure that [he] was complying with the grievance process," and relied on other inmates to guide him through the process. Tr. 11, 24-25. This claim, however, is less than credible, particularly since plaintiff was able to successfully navigate the process by filing a grievance at Shawangunk and then file an appeal to the CORC while housed at an

entirely different facility. I note that at each step, plaintiff also utilized the

proper forms. Further, in opposition to defendant's motion to dismiss,

plaintiff correctly pointed out that the time period proscribed by the

regulations for the CORC to respond to his appeal had lapsed.[9] Dkt. No.

21 at 1.

Finally, during the exhaustion hearing, testimony was adduced that

each facility had two copies of DOCCS Directive 4040, setting forth the

IGP process and that in addition information regarding the grievance is

also available in the inmate handbook. Tr. 49, 88. According to plaintiff,

"it was very hard to receive anything" from the Shawangunk law library

and that he "made [a] few attempts" to request grievance materials from

the Auburn law library, but was "told that [he] had to wait for certain

things." Tr. 7-9, 24-25. Plaintiff conceded that he became impatient while

waiting for materials and would simply "continue to ask another inmate to

help [him]." *Id.* This testimony that plaintiff engaged in cursory efforts to

obtain materials from the law library fails to support a finding that "prison

---

[9]     There was some vague testimony offered at the hearing by the IGP supervisor
at Shawangunk, Michael Cunningham, to the effect that "some inmates go through
orientation" when they arrive at Shawangunk, and that the orientation includes an
outline the IGP grievance process. Tr. 85-86. However, Cunningham was unable to
confirm that all inmates arriving at the facility, including those who - like plaintiff -
were previously confined at other facilities, *see* Exh. D-8, receive orientation. Tr. 98.

administrators thwart[ed him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation" and rendered the IGP unavailable. *Williams*, 829 F.3d at 124 (quoting *Ross*, 136 S. Ct. at 1860).

Based upon the foregoing, I conclude that defendant has sustained his burden of proving by a preponderance of the evidence the affirmative defense that plaintiff failed to exhaust his administrative remedies, which remained available to Grant at all times.

### D.    Dismissal Without Prejudice

In his memorandum, plaintiff argues that if the court finds he should not be excused from his failure to exhaust available remedies before commencing this action, any dismissal of his complaint should be without prejudice. Dkt. No. 43 at 13-14. While defendant has not responded this argument, *see generally* Dkt. No. 44, I agree with plaintiff on this final point.

More than seventeen years ago, the Second Circuit concluded that post-commencement exhaustion cannot salvage a prisoner's otherwise premature federal action. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002) ("[E]xhausting administrative remedies after a complaint

24

is filed will not save a case from dismissal."). Although dismissal of this action until the CORC has ruled, following which plaintiff could re-file his complaint, would seem to run contrary to the "just, speedy, and inexpensive determination of every action" principle mandated by Rule 1 of the Federal Rules of Civil Procedure, in that case, the Second Circuit reasoned that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."[10] *Neal*, 267 F.3d at 123.

Here, dismissal would seem to run afoul of Rule 1, particularly in light of the fact that the "regulations simply do not contemplate the situation" that plaintiff will face upon the dismissal of his complaint; that is, plaintiff has seemingly fulfilled all of his obligations pursuant to the IGP, but the regulations fail to outline a process for use by the plaintiff to obtain a determination from the CORC, which was required to issue a determination "within [thirty] calendar days from the time the appeal was

---

[10]    The Second Circuit also acknowledged that in the event an inmate benefits from utilizing the administrative process, "the federal court will have wasted its resources adjudicating claims that could have been resolved with the prison grievance system at the outset." *Neal*, 267 F.3d at 123 (citing *Nyhuis v. Reno*, 204 F.3d 65, 74 (3d Cir. 2000) ("The very nature of [inmate-plaintiffs'] complaints necessitates that courts expend significant and scarce judicial resources to review and refine the nature of the legal claims presented.")).

received," *see* 7 N.Y.C.R.R. § 701.5, but is backlogged approximately

fourteen months. Tr. 55, 81. Nonetheless, I acknowledge that in light of

the Second Circuit's decision in *Neal*, courts in this district have almost

uniformly held that "a post-exhaustion amendment of the complaint

cannot cure an exhaustion defect existing at the time the action was

commenced." *Guillory v. Haywood*, No. 13-CV-01564, 2015 WL 268933,

*11 (N.D.N.Y. Jan. 21, 2015); *see Thousand v. Corrigan*, No. 15-CV-

01025, 2017 WL 1093275, at *3 (N.D.N.Y. Mar. 23, 2017); *Reid v.

Marzano*, No. 15-CV-761, 2017 WL 1040420, at *2 (N.D.N.Y. Mar. 17,

2017); *Kearney v. Gebo*, No. 15-CV-253, 2017 WL 61951, at *2

(N.D.N.Y. Jan. 4, 2017); *Klein v. Fischer*, No. 13-CV-0437, 2015 WL

5174031, at *19 (N.D.N.Y. Sept. 2, 2015) ("Furthermore, a post-

exhaustion amendment of the complaint cannot cure an exhaustion

defect existing at the time the action was commenced.").

Accordingly, although I recommend that plaintiff's complaint be

dismissed, I further recommend that the dismissal be without prejudice to

plaintiff's right to re-file once exhaustion has occurred. *See McCoy v.

Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) ("A dismissal for

failure to exhaust is usually without prejudice, because failure to exhaust

is ordinarily a temporary, curable, procedural flaw.").

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Based upon the foregoing, I recommend a finding that plaintiff's remaining claim against defendant for excessive force should be dismissed based upon his failure to exhaust his available administrative remedies, which remained available to him at all times. Accordingly, it is hereby respectfully

RECOMMENDED that the court conclude that plaintiff's remaining claim in this action is barred by the PLRA based upon his failure to exhaust available administrative remedies before commencing suit, and that his remaining claim in this action should therefore be DISMISSED on this basis.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      January 3, 2019
            Syracuse, New York